# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

BRIAN FREED,

     **Plaintiff,**

   v.           **Case No. 23-CV-1221**

MARTIN O'MALLEY,
Commissioner of Social Security,

     **Defendant.**

## DECISION AND ORDER

### 1. Introduction

Alleging he has been disabled since March 15, 2017 (Tr. 791), plaintiff Brian Freed seeks supplemental security income and disability insurance benefits. His date last insured was June 30, 2022. (Tr. 793.) After his application was denied initially (Tr. 168) and upon reconsideration (Tr. 162), a hearing was held before Administrative Law Judge (ALJ) Guila Parker on May 14, 2019 (Tr. 58-97). On June 19, 2019, the ALJ issued a written decision concluding that Freed was not disabled. (Tr. 45.) After the Appeals Council denied Freed's request for review on May 5, 2020 (Tr. 51), he filed an action in this court. On September 20, 2021, this court remanded for a new hearing and decision. (Tr. 885.)

On January 19, 2023, a second hearing was held before the ALJ. (Tr. 819-844.) On March 7, 2023, the ALJ issued a partially favorable written decision, finding that Freed was not disabled between March 15, 2017, and February 19, 2022, but that he became disabled on February 20, 2022. (Tr. 809.) On July 21, 2023, the Appeals Council again denied Freed's request for review of the portion of the ALJ's decision finding him not disabled. (Tr. 780-81.) Freed subsequently filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 3, 5), and the matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled, an ALJ applies a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). At step one the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). The ALJ found that Freed "has not engaged in substantial gainful activity since March 15, 2017, the alleged onset date[.]" (Tr. 794.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). The ALJ concluded that Freed has the

following severe impairments: coronary artery disease (status post myocardial infarction x2 with stenting), irritable bowel syndrome, headaches, hernia, and obesity. (Tr. 794.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"), 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 416.920(a)(4)(iii), 416.925. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. §§ 404.1509, 416.909, the claimant is disabled. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ found that Freed "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 796.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a). In making the RFC finding the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). In other words, "[t]he RFC assessment is a function-by-

3

function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that Freed has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except: the claimant is precluded from climbing ladders, ropes, and scaffold. The claimant should not work at unprotected heights or operate dangerous moving machinery. The claimant can occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl. The claimant can perform work that does not require concentrated exposure to extreme heat, extreme cold, wetness, or vibration. The claimant can work in an environment with no more than a moderate noise intensity (moderate noise as defined in the SCO). The claimant can work in an environment with light intensity no greater than what is found in a typical office setting.

(Tr. 797.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560, 416.920(a)(4)(iv), 416.960. The ALJ concluded that Freed has been unable to perform any past relevant work since March 15, 2017, the alleged onset date. (Tr. 807.)

The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c), 416.920(a)(4)(v), 416.960(c). The ALJ noted that on February 20, 2022, Freed's age category changed to an individual of advanced age. (Tr. 807.) The ALJ then concluded that, prior to February 20, 2022, "there were jobs that existed in significant numbers in the national economy that [Freed] could have performed[.]" (Tr. 808.) She found that Freed could have worked as a

4

router (Dictionary of Occupational Titles (DOT) Number 222.587-038), mail clerk (DOT Number 209.687-026), or routing clerk (DOT Number 222.687-022). (Tr. 808.) The ALJ further concluded that, after his age category changed on February 20, 2022, "there are no jobs that exist in significant numbers in the national economy that [Freed] could perform[.]" (Tr. 809.) As a result, the ALJ found that Freed was not disabled prior to February 20, 2022, but became disabled as of February 20, 2022. (Tr. 809.)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'"

*L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

## 4. Analysis

### 4.1. Medical Opinions

An ALJ must assess a medical opinion in terms of its persuasiveness, paying particular attention to how well the expert supports his opinion, how consistent the opinion is with the record, the expert's relationship with the claimant, the expert's specialization and expertise, and any other particularly relevant factors. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Although an ALJ must consider all of these factors, he need only explain how he considered supportability and consistency. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).

#### 4.1.1. Treating Providers' Opinions

The ALJ evaluated opinions from four of Freed's treating providers: cardiologist Lisa Armaganian, M.D., gastroenterologists Aaron Baltz, M.D. and Peter Han, M.D., and internist Russ Blankenburg, M.D.

Dr. Armaganian completed a cardiac impairment questionnaire in which she indicated that Freed's cardiac symptoms were stable and that his symptoms were instead related to his gastrointestinal and headache impairments. (Tr. 709.) She opined that Freed's symptoms would likely increase if he were placed in a competitive work environment; that his symptoms would be severe enough to occasionally interfere with

his attention and concentration; that he would need to take unscheduled breaks to rest at unpredictable intervals during an eight-hour workday; and that he likely would be absent more than three times per month. (Tr. 711-12.) Dr. Armaganian stated in the comments that gastrointestinal doctors might provide more precise information related to Freed's issues. (Tr. 713.)

The ALJ found Dr. Armaganian's opinion unpersuasive, stating that her assessment of Freed's absenteeism, need for unscheduled breaks, and ability to concentrate was inconsistent with her own findings and not supported by the evidence in the record. (Tr. 800.) With respect to Dr. Armaganian's opinions regarding Freed's gastrointestinal impairments, the ALJ noted that Dr. Armaganian deferred to Freed's gastrointestinal doctors to provide additional information regarding those issues. (Tr. 800.) The ALJ also discussed the fact that Dr. Armaganian did not provide a function-by-function analysis or rationale explaining how Freed's gastrointestinal symptoms supported her opined limitations. (Tr. 800.)

Dr. Baltz completed a gastrointestinal impairment questionnaire in which he provided his opinion as to the effects of Freed's anemia, gastroesophageal reflux disease ("GERD"), abdominal pain, and constipation. (Tr. 1468.) Dr. Baltz noted that Freed's prognosis was good, but opined that Freed's pain, fatigue, and other symptoms would be severe enough to frequently interfere with his attention and concentration; he was

capable of low work stress; his impairments were likely to produce good and bad days; and he would need ready access to a bathroom. (Tr. 1471-73.)

The ALJ found Dr. Baltz's opinion unpersuasive, stating that the medical evidence did not support the degree of Freed's gastrointestinal impairments. (Tr. 801-02.) The ALJ noted that Dr. Baltz had only been treating Freed since 2019 and saw him only twice per year and that his prescribed course of treatment did not support the degree of limitations opined. (Tr. 802.) She also emphasized that Dr. Baltz indicated a good prognosis, with physical exams frequently showing normal findings. (Tr. 802.) Ultimately, the ALJ stated that "the course of treatment pursued by the doctor has not been consistent with what one would expect if the claimant were truly disabled, and the provider has not provided accompanying findings with his opinion statement supporting how [Freed]'s impairments interfere with his ability to pay attention and concentrate." (Tr. 802.)

Dr. Han completed a gastrointestinal impairment questionnaire evaluating the effects of Freed's irritable bowel syndrome, indicating that Freed's primary symptoms were abdominal pain and constipation. (Tr. 694-95.) Dr. Han opined that Freed's symptoms were severe enough to frequently interfere with his attention and concentration; that he was capable of low work stress, but stress would exacerbate his symptoms; that he could sit for three hours and stand for two hours in an eight-hour workday; that he would need to get up and move around for ten minutes a "couple times a day;" that he could occasionally lift up to 50 pounds and occasionally carry up to 20

pounds; that his symptoms were likely to produce good and bad days; that he would be absent more than three times per month; and that he would need ready access to a bathroom multiple times per day for twenty minutes at a time. (Tr. 697-98.)

The ALJ found Dr. Han's opinion partially persuasive with respect to the limitations indicating that Freed was capable of work at a light exertional level— specifically, the lifting and carrying limitations. (Tr. 806.) As to the limitations in sitting, standing, and having to get up and move around, the ALJ stated that they were not supported by the medical evidence in the record. (Tr. 807.) The ALJ further concluded that Dr. Han's opinions as to Freed's ability to concentrate, his absenteeism, and his stress tolerance were not supported by the objective medical evidence, emphasizing Freed's normal exam findings. (Tr. 807.) With respect the concentration limitations opined by Dr. Han, the ALJ also noted that Dr. Han is not specialized in psychiatry. (Tr. 807.)

Finally, Dr. Blankenburg completed multiple medical source statements. He completed a multiple impairments questionnaire in which he stated that Freed had been diagnosed with irritable bowel syndrome, migraines, and GERD. (Tr. 1229.) He opined that Freed could perform a job in a seated or standing position for less than one hour; that he should avoid continuous sitting; that he must get up every thirty minutes to move around for thirty minutes at a time; that he can occasionally lift and carry up to 50 pounds; that he can occasionally lift and twist objects with the bilateral upper extremities and occasionally use his bilateral hands and fingers for fine manipulations; that he can

occasionally use his bilateral arms for reaching; that his symptoms increase under stress; that he would frequently experience symptoms severe enough to interfere with attention and concentration; that he would need hourly unscheduled breaks lasting thirty minutes; that he would be absent more than three times per month; that he has good days and bad days; and that his anxiety exacerbates his irritable bowel syndrome. (Tr. 1231-33.) Dr. Blankenburg further opined that Freed was disabled. (Tr. 1233.)

The ALJ found Dr. Blankenburg's opinion unpersuasive, stating that the degree of limitation opined was not supported by the documented physical exam findings, imaging, or other diagnostic tests, and that Dr. Blankenburg overstated Freed's limitations in comparison to his actual activities and subjective complaints. (Tr. 803.) She explained that the opined limitations regarding time off task and absenteeism were not supported by the evidence in the record based on Freed's course of treatment, his daily activities, and Freed's generally normal exam findings.  (Tr. 804.)

Dr. Blankenburg also completed a headache questionnaire, indicating that Freed suffers from chronic tension headaches and migraines. (Tr. 1353.) Dr. Blankenburg stated that Freed's headaches cause him to experience nausea/vomiting, photosensitivity, visual disturbances, and mental confusion/inability to concentrate. (Tr. 1354.) He indicated that Freed experiences headaches daily and that they last 24 hours with two or three-hour flares. (Tr. 1354.) He stated that weather changes triggered his headaches while bright lights, stress, and moving around made them worse. (Tr. 1355.) Dr. Blankenburg opined

that Freed's symptoms would frequently interfere with his attention and concentration; that he was capable of tolerating moderate work stress; that he would be absent more than three times per month; that he should not perform any pushing, pulling, bending; and that he should avoid temperature extremes. (Tr. 1355-58.) He also opined that Freed was disabled. (Tr. 1358.)

The ALJ found Dr. Blankenburg's opinion regarding Freed's headaches unpersuasive, stating that the degree of limitation was not supported by the objective medical evidence, and that it overstated Freed's limitations in comparison to his activities and reports. (Tr. 805.) She stated that the documented severity of Freed's symptoms, his course of treatment for his headaches, and his daily activities did not support the opined off-task and absenteeism limitations opined by Dr. Blankenburg. (Tr. 805.)

#### 4.1.1.1. Objective Medical Evidence

Freed sets forth several arguments challenging the ALJ's analysis of the various treating providers' opinions. He first argues that the ALJ "erred to the extent she rejected the opinions from the treating doctors based on a perceived lack of clinical and/or objective evidence of disabling headaches and IBS." (ECF No. 10 at 15.) He points out that migraines "do not stem from a physical or chemical abnormality that can be detected by imaging techniques, laboratory tests, or physical examination." (*Id.* (quoting *Longerman v. Astrue*, No. 11 CV 383, 2011 WL 5190319, at *8 (N.D.Ill. Oct. 28, 2011)).) "Similarly, there is no test that can diagnose or assess the severity of IBS." (*Id.* (citing *Caldwell v. Astrue*, No.

3:09-cv-00777, 2010 WL 5184247, at *6 (S.D. W. Va. Dec. 15, 2010)).) As a result, Freed argues that the ALJ's discussion of the treating providers' opinions regarding Freed's headaches, migraines, and IBS exhibits a fundamental misunderstanding of his impairments. (*Id.* at 15.)

### A. Headaches

With respect to Freed's headaches and migraines, an ALJ's reliance on an absence of evidence documenting an impairment, such as imaging, physical exam findings, or other testing, may be problematic if the impairments could not be documented using those measures, but that is not what the ALJ did here. Prior to her evaluation of Dr. Blankenburg's headache-specific opinions, the ALJ explained that, while Freed's treatment records documented headaches and migraines, treatment notes provided little detail about the severity or duration of those headaches as well as accompanying symptoms. (Tr. 804.) The ALJ reasonably determined that Dr. Blankenburg's opined limitations were not supported by Freed's longitudinal treatment record. She did not falsely equate an absence of testing or imaging documenting the severity of Freed's headaches with a finding that the opined limitations lacked support in the record. Rather, she determined that the evidence that did document his headaches lacked sufficient detail about those headaches, such that Dr. Blankenburg's opinion lacked support.

**B. Gastrointestinal Issues**

The ALJ discounted the opinions of both of Freed's gastroenterologists, Drs. Baltz and Han, in part because physical exam records regularly exhibited "normal findings." For example, when discounting Dr. Han's opinion, the ALJ cited Freed's "normal labs, normal CT, and normal endoscopes," and his "normal abdominal exam findings." (Tr. 806.) The ALJ explained that Dr. Baltz's opined limitations were inconsistent with Freed's physical exam findings that regularly showed no distress, normal cardiovascular findings, a nondistended, nontender abdomen, no guarding, normal bowel sounds, alert, oriented, intact motor function, good ROM extremities, and appropriate mood/affect. (Tr. 802.) But the ALJ did not explain why these findings undermined the treating providers' opinions. The ALJ did not point to anything in the record indicating that the findings cited are inconsistent with Freed's abdominal pain and constipation, symptoms that formed the basis of the limitations opined by Drs. Baltz and Han.

### 4.1.1.2. Course of Treatment

Next, Freed argues that the ALJ erred in finding the treating providers' opinions inconsistent with his course of treatment for his headaches and gastrointestinal issues. "It is unclear what the layman ALJ felt was a more appropriate, more aggressive treatment as migraines and IBS are not treated through aggressive means such as surgery and there is no requirement that an individual need present to the hospital to be found disabled."

(ECF No. 10 at 18-19.) The Commissioner responds that the ALJ reasonably considered Freed's treatments when assessing the medical opinion evidence. (ECF No. 18 at 7.)

### A. Headaches

With respect to Freed's headaches, the ALJ found that Dr. Blankenburg's opined limitations as to time off task and absenteeism were inconsistent with Freed's treatment, noting that Freed treated his headaches and migraines by taking aspirin and going to a dark, quiet room, and that his headaches never resulted in any emergency department treatment. (Tr. 805.)

The problem with the ALJ's discussion of Freed's headache treatments is that it's not clear how Freed's course of treatment undermines Dr. Blankenburg's opinion. The ALJ failed to explain why Freed's use of aspirin and his practice of going to a dark, quiet room undermined Dr. Blankenburg's opinion that he would need to take frequent unscheduled breaks and would be absent more than three times per month. Indeed, the ALJ found that Freed's course of treatment undermined these limitations while explicitly acknowledging Freed's reports that nothing helped with his headaches. (*See* Tr. 805.)

### B. Gastrointestinal Issues

The ALJ found Dr. Baltz's opined limitations inconsistent with Freed's treatment, specifically, the fact that Freed only saw Dr. Baltz twice per year and that it was recommended he have a high fiber diet and get a colonoscopy in three years, stating that "the frequency of appointments implies no urgency as to" Freed's gastrointestinal

impairments. (Tr. 802.) The ALJ also explained that Dr. Blankenburg's regarding time off task and absenteeism were not supported because, while Freed experienced pain, he treated with pain medication and dietary supplements, including Vicodin, which helped "a little." (Tr. 804.)

Again, it's not clear why Freed's treatments undermined the doctors' opined limitations. That Freed's treatment with Dr. Baltz "implies no sense of urgency" does not say anything about the limiting effects of Freed's gastrointestinal impairments. The ALJ also failed to explain *which* limitations she found inconsistent with the course of treatment recommended by Dr. Baltz. And while the ALJ noted that Freed took pain medications for his abdominal pain, she explicitly acknowledged that such treatment helped Freed only "a little." The ALJ did not explain why treatment that provided only minor relief undermined Dr. Blankenburg's opinions regarding Freed's time off task and absenteeism.

### 4.1.1.3. Daily Activities

Finally, the ALJ stated that Dr. Blankenburg's opined limitations regarding both Freed's headaches and gastrointestinal impairments were not supported by his daily activities. (Tr. 804-05.) According to Freed, this conclusion that was erroneous because he did not report engaging in any activities that contradict the medical opinions. (ECF No. 10 at 19.) In response, the Commissioner argues that the ALJ validly found the treating providers' opinions inconsistent with Freed's daily activities. (ECF No. 18 at 8.) "Earlier

in his decision, the ALJ noted that [Freed] was able to live alone, perform self-care tasks independently, complete household chores, cook, shop, drive, shovel snow with breaks, and read for pleasure." (*Id.* (citing Tr. 795, 803-04).)

While the ALJ explained how Freed's daily activities supported her conclusions with respect to the paragraph B criteria at step two, she offered no explanation as to how those activities undermined the relevant medical opinions from Dr. Blankenburg. Nor did she explain *which* of Freed's activities undermined the limitations opined by Dr. Blankenburg. (*See* Tr. 804-05.)

### 4.1.1.4. Absence of Psychiatric Expertise

The Commissioner attempts to defend the ALJ's rejection of the various treating providers' opinions based on their lack of specialization in psychiatry, suggesting that, by opining as to how Freed's impairments would affect his ability to concentrate and pay attention, they stepped outside their areas of expertise. (ECF No. 18 at 8 (citing Tr. 806-07; 20 C.F.R. § 404.1520c(c)(4); *Gibbons v. Saul*, 801 F. App'x 411, 416 (7th Cir. 2020); *White v. Barnhart*, 415 F.3d 654, 660 (7th Cir. 2005); *Oechsner v. Kijakazi*, No. 23-C-56, 2023 WL 5487113, at *19 (E.D. Wis. Aug. 24, 2023)).)

The cases that the Commissioner cites involve instances in which medical professionals assessed opinions on issues in which they had no expertise or specialization. *See White*, 415 F.3d at 660 (ALJ did not err in discounting medical opinion that claimant had a mental disorder where the medical professional specialized in acute

and chronic pain as well as musculoskeletal disorders, rather than mental impairments); *Oechsner*, 2023 WL 5487113, at *19 (ALJ did not err in discounting psychologist's opinion regarding claimant's physical impairments). Here, Drs. Han and Blankenburg did not conduct psychiatric evaluations of Freed, diagnose him with mental impairments, or assess limitations based on mental impairments. Rather, they simply assessed the extent to which Freed's physical impairments and related symptoms, such as pain, would limit his ability to concentrate.

### 4.1.1.5. Cardiologist's Opinion

While Freed argues that the ALJ improperly discounted the opinion of his cardiologist, Dr. Armaganian, he has not shown that the ALJ erred. Freed challenges the ALJ's assessment of Dr. Armaganian's opinions with respect to his gastrointestinal impairments, as opposed to his cardiac impairments. (*See* ECF No. 19 at 7 ("Mr. Freed does not dispute the ALJ's findings with respect to his cardiac impairments in this appeal.").) Dr. Armaganian did not treat Freed's gastrointestinal issues, and ultimately deferred to his gastrointestinal doctors for further information on those issues. (Tr. 713.) The ALJ discounted Dr. Armaganian's opinion in part based on her deference to Freed's other providers and failure to provide a function-by-function analysis regarding Freed's gastrointestinal impairments. The ALJ reasonably discounted Dr. Armaganian's opinions with respect to Freed's gastrointestinal issues.

17

In sum, the ALJ's assessment of the opinions of Drs. Baltz, Han, and Blankenburg lacks sufficient explanation and thereby fails to establish the requisite accurate and logical bridge between the evidence and the ALJ's conclusions. *See Spicher v. Berryhill*, 898 F.3d 754, 757 (7th Cir. 2018). As a result, remand is required so the ALJ can reassess these medical opinions.

### 4.1.2. State Agency Reviewing Consultant Opinion

On reconsideration, state agency medical consultant James Greco, M.D. opined that Freed was capable of work at the light exertional level. (Tr. 138-39.) The ALJ found that Dr. Greco's opinion was generally persuasive because it was consistent with and supported by the evidence in the record, stating that the assessment was particularly consistent with "evidence regarding the effects of the claimant's combined obesity, irritable bowel syndrome, hiatal hernia and coronary artery disease with a history of two myocardial infarctions that required stenting as well as more recent records that indicate that the claimant underwent additional stenting during a heart catheterization procedure." (Tr. 805.) The ALJ then stated, "[h]owever, the additional evidence available at the hearing, no [sic] considered by the agency medical consultants, including subsequent medical evidence and hearing testimony as more fully cited above, supports an additional limitations [sic] as set forth in the above residual functional capacity herein," because they more adequately accounted for Freed's triggers, exacerbating activities, and medication side effects. (Tr. 805.)

Freed argues that Dr. Greco reviewed Freed's file in April 2018 and only reviewed medical records pertaining to Freed's headache and gastrointestinal impairments through September 2017. (ECF Nos. 10 at 20, 19 at 4.) He also points out that Dr. Greco never examined Freed and is not a relevant specialist. (ECF No. 10 at 20.) According to Freed, these were relevant factors that the ALJ should have considered. (*Id.* (citing 20 C.F.R. §§ 404.1520c(c)(3)-(4), 416.920c(c)(3)-(4)).)

Freed fails to demonstrate any error in the ALJ's assessment of Dr. Greco's opinion limiting him to light work. His argument that the ALJ failed to consider the fact that Dr. Greco's opinion only reviewed evidence documenting Freed's headache and gastrointestinal impairments through September 2017 is without merit. As the Commissioner points out in response, the ALJ explicitly recognized the fact that evidence post-dating Dr. Greco's assessment supported additional restrictions in Freed's RFC. (ECF No. 18 at 6.) Moreover, while the regulations instruct ALJs to consider a medical professional's examining relationship and expertise when assessing the persuasiveness of a medical opinion, they are not required to explicitly discuss those factors in their decisions. *See* 20 C.F.R. § 404.1520c(b)(2), (c)(3)-(4).

### 4.2. Symptom Evaluation

The ALJ must assess a claimant's symptoms (*i.e.*, "the individual's own description or statement of his or her physical or mental impairment(s)") using a two-step process. SSR 16-3p. First, the ALJ must determine "whether there is an underlying medically

determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p. If step one is satisfied, at step two the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." SSR 16-3p.

In addition to considering all other relevant evidence, the ALJ must also consider the following factors to the extent they are relevant:

1. Daily activities;
2. The location, duration, frequency, and intensity of pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p. The ALJ's conclusion is entitled to

"special deference," and the court may disrupt it only if that assessment was "patently wrong." *Burmester*, 920 F.3d at 510; *Summers*, 864 F.3d at 528.

With respect to Freed's symptom allegations, the ALJ concluded that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported for the reasons explained in this decision.

(Tr. 799.)

Freed contends that the ALJ erred in assessing his symptom allegations by failing to provide specific reasons for discounting his statements regarding his headaches and gastrointestinal impairments and instead employing meaningless boilerplate. "The Circuit has repeatedly held that a conclusory finding by an ALJ that Plaintiff's statements regarding his impairments are 'not entirely consistent' with the record or 'not entirely credible' is not a sufficient explanation of a claimant's allegations…." (ECF No. 10 at 23 (citing 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p; *Parker v. Astrue*, 597 F.3d 920, 922-923 (7th Cir. 2010)).)

An ALJ's use of boilerplate language is not problematic provided the ALJ explains the reasons for his conclusion. *See Taylor v. Saul*, No. 19-CV-359, 2020 WL 1934458, at *3 (E.D. Wis. Apr. 22, 2020). This requires that the ALJ not merely recite the evidence but connect the evidence to his conclusions. *Id.* (citing SSR 16-3p; *Krevs v. Saul*, No. 18-CV-1742, 2020 U.S. Dist. LEXIS 1236, 2020 WL 58068, at *2 (E.D. Wis. Jan 6, 2020)).

The Commissioner contends that the ALJ provided such an explanation, articulating specific reasons for concluding that Freed's statements regarding his symptoms were not fully supported by the record. (ECF No. 18 at 12-13.) He argues that the ALJ compared Freed's allegations to the objective medical evidence in the record, Freed's course of treatment, the precipitating and aggravating factors regarding his headaches, and his daily activities when evaluating his symptom statements. (*Id.* at 13-15 (citing Tr. 795, 798, 802-05, 807, 800).)

But the referenced portions of the ALJ's decision do not compare the evidence to Freed's symptom allegations and explain why the evidence undermines those allegations. Much of the ALJ's discussion on these points merely summarizes the evidence documenting Freed's impairments or compares the evidence to the medical opinions in the record rather than considering the evidence in light of Freed's allegations.

For example, the Commissioner states that the ALJ compared Freed's allegations to his course of treatment for his headaches, noting that Freed was prescribed abortive medication and took over-the-counter aspirin, but was not referred to a neurologist or prescribed other treatment. (ECF No. 18 at 14 (citing Tr. 804-05).) But the ALJ did not discount Freed's symptom allegations in light of this evidence. Rather, she cited this evidence when discussing why she found Dr. Blankenburg's opinion regarding Freed's headaches unpersuasive. (*See* Tr. 805.) Additionally, while the Commissioner claims that the ALJ found that Freed's ability to do household chores, shovel snow with breaks,

perform personal care, make meals, drive, and shop undermined his allegations of disabling abdominal pain and headaches (ECF No. 18 at 15 (citing Tr. 795, 798, 800)), the ALJ made no such finding. Instead, she summarized his activities (Tr. 798) and discussed them when she evaluated the paragraph B criteria at step two (Tr. 795) and when assessing various medical opinions (Tr. 800, 804-05).

While the evidence the Commissioner points to *could* support the ALJ's conclusion that Freed's allegations were not entirely supported, it is not enough that an ALJ made statements that *could* support her conclusion; the court can consider only the reasons she actually provided. *See Mallett v. Saul*, No. 19-CV-512, 2020 WL 1317016, at *5 (E.D. Wis. Mar. 20, 2020). To hold otherwise would invite ALJs to issue decisions that consist of comprehensive summaries of the evidence but only bald conclusions. The Commissioner could then cobble together a plausible rationale for the conclusion from the factual summary, a rationale that would be entitled to deference on the premise that it was the ALJ's. As Freed points out, such an approach would offend the *Chenery* doctrine. (ECF No. 19 at 4); *see SEC v. Chenery Corp.*, 318 U.S. 80, 87-88, 63 S.Ct. 454, (1943). It would also be inconsistent with the ALJ's obligation to connect her conclusions to the evidence. *See Krevs*, 2020 WL 58068, at *2-3.

The court can only consider the reasons the ALJ actually provided for her conclusion that Freed's symptom allegations were not entirely supported by the record. The only portion of the ALJ's decision from which the court can glean an explicit

evaluation of Freed's symptom allegations in comparison to the evidence is when she compared his allegations of gastrointestinal symptoms to objective medical evidence. (*See* Tr. 802.) The ALJ summarized some of the objective findings regarding Freed's irritable bowel syndrome and related symptoms of chronic severe abdominal pain, chronic constipation, and diarrhea. (*Id.*) She stated that, while treatment notes indicated a longstanding history of abdominal pain and constipation caused by IBS, a July 2016 colonoscopy found hemorrhoids, diverticulosis, and colon polyps but was otherwise normal. (*Id.* (citing Tr. 502).)

The ALJ further noted that, "[a]lthough [Freed] reports he suffers from chronic severe abdominal pain, March 2017 treatment notes indicate the claimant was doing relatively well until he was treated for a sinus infection earlier in the year[.]" (Tr. 802 (citing Tr. 488).) She also found that, while Freed alleged constipation with waxing and waning abdominal pain that worsened prior to and during a bowel movement or when he had not had a bowel movement for several days, a March 2017 physical exam found only mild tenderness with no evidence of rebound or guarding. (*Id.* (citing Tr. 491)). Finally, she noted that, while in September 2017 Freed reported continued problems related to his IBS, during the same month he reported to emergency room staff that he was having bowel movements without difficulty and denied black or bloody stool. (*Id.* (citing Tr. 568, 1198).)

While the evidence cited by the ALJ may discredit some of Freed's allegations regarding ongoing constipation, she failed to explain how the evidence undermines his allegations of abdominal pain. Nor did she explain why a report that Freed was doing "relatively well" was inconsistent with his allegations of chronic abdominal pain, especially considering that Freed's pain was reported to intensify in certain instances, such as prior to or during bowel movements, or when he had not had a bowel movement for a period of days. It's also not clear why findings noting mild tenderness and the absence of rebound or guarding undermined his allegations of abdominal pain.

Moreover, the ALJ failed to discuss Freed's symptom allegations regarding his other impairments. Freed alleged that his headaches resulted in daily headaches and migraines a few times a month. (Tr. 798.) The ALJ did not provide reasons for discounting Freed's allegations regarding the severity and limiting effects of his headaches.

In sum, the ALJ failed to give sufficient specific reasons for her decision to discount Freed's statements regarding the severity of his symptoms. Remand is required so that the ALJ can reassess Freed's allegations of disabling symptoms.

## 5. Conclusion

The ALJ failed to adequately explain her assessments regarding the persuasiveness of the medical opinions from Drs. Baltz, Han, and Blankenburg. On remand, she must reassess these opinions and explain how the evidence supports her conclusions regarding their persuasiveness.

Additionally, the ALJ failed to adequately support and explain her evaluation of Freed's symptom allegations. On remand, she must reassess Freed's symptom allegations in accordance with SSR 16-3p and provide specific reasons for her conclusions.

Freed argues that '[t]he decision of the Commissioner should be reversed solely for an award and calculation of benefits for the remaining period at issue between March 15, 2017 and February 19, 2022" because all the treating providers agree that Freed suffers from disabling impairments, and, because he initially applied for benefits seven years ago, "it is unlikely that any additional evidence can be produced relevant to the period at issue on appeal." (ECF No. 10 at 24.) A direct award of benefits, however, is inappropriate because not all factual issues have been resolved, *see Israel v. Colvin*, 840 F.3d 432, 441-42 (7th Cir. 2016), and the evidence is not such that it "can yield but one supportable conclusion." *Martin v. Saul*, 950 F.3d 369, 376 (7th Cir. 2020) (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **vacated**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 29th day of July, 2024.

WILLIAM E. DUFFIN
U.S. Magistrate Judge